JOSÉ MÉNDEZ LÓPEZ, peticionario, *v.* TRIBUNAL DE DISTRITO DE PUERTO RICO, SECCIÓN DE PONCE, HON. RAMÓN A. GADEA PICÓ, JUÉZ, demandado; FRANCISCA JUSINO VDA. DE FIGUEROA, interventora.

Núm. 1902.—*Sometido:* Mayo 2, 1951. *Resuelto:* Mayo 25, 1951.

*Práxedes Alvarez Leandri,* abogado del peticionario; *Fernando Zapater Martínez* y *Antonio Zapater Cajigas,* abogados de la interventora, demandada en el pleito principal.

El Juez Presidente Interino Señor Todd, Jr., emitió la opinión del tribunal.

En la demanda de desahucio radicada por José Méndez López en el Tribunal Municipal de Puerto Rico, Sección de Ponce, después de describirse la propiedad de la cual es dueño, se alegó en parte lo siguiente:

"Que desde hace varios años alquiló esta finca a la demandada en contrato de mes a mes con el fin de que la demandada la ocupase como su propia residencia, pagando por ella el canon mensual de $45. Que el demandante notificó a la demandada por escrito el día 24 de enero de 1950 que necesitaba esta casa para ser ocupada por su hijo legítimo Prudencio Méndez con la esposa e hijos de éste como su residencia a la vez que en dicha misma fecha solicitó permiso de la Oficina Federal de Inquilinato en San Juan para desahuciar a la demandada en caso de que no desocupase la casa por el motivo de que la necesitaba el demandante para dársela a su hijo y familia que la ocuparan como residencia y dicha oficina de inquilinato con fecha 23 de febrero de 1950 autorizó al aquí demandante a radicar demanda de desahucio contra la demandada después del 9 de mayo de 1950, y copia de ese permiso le fué remitido a la demandada quien tiene conocimiento de la autorización del de-

mandante para desahuciarla. Que la demandada a pesar de haber transcurrido más de seis meses desde que fuera expedido el permiso mencionado antes, no ha desocupado la casa no obstante las gestiones hechas por el demandante. Que el demandante desea recobrar la posesión de la vivienda para usarla inmediatamente y personalmente de buena fe, como residencia de su hijo legítimo Prudencio Méndez, su esposa e hijos, ya que éstos no tienen casa propia ni la han tenido nunca, y están viviendo en una alquilada en pésimas condiciones, amenazando la salud y seguridad del referido Prudencio Méndez y su familia. . . ."

A virtud de excepción previa formulada por la demandada al efecto de que la demanda no aducía hechos constitutivos de causa de acción, el Tribunal de Distrito de Puerto Rico, Sección de Ponce, en grado apelativo, declaró con lugar dicha excepción concediendo al demandante cinco días para enmendar su demanda. Denegada la reconsideración solicitada por el demandante y no habiendo éste enmendado la demanda, dicho tribunal, a moción de la demandada, dictó sentencia declarando sin lugar la demanda, con costas más $75 por concepto de honorarios de abogado. A petición del demandante expedimos el auto de *certiorari* en este caso.

La cuestión fundamental a resolver es si en la actualidad en Puerto Rico procede una acción de desahucio basada en la alegación de que el dueño de una casa alquilada, con contrato de mes a mes, la necesita de buena fe como residencia para un hijo suyo, por el hecho de que la Oficina Federal de Inquilinato de Puerto Rico haya expedido un certificado de evicción al efecto, no obstante disponer el artículo 12-A 6 de la Ley de Alquileres Razonables, tal y como fué enmendado por la Ley núm. 201 de 14 de mayo de 1948 ( (1) pág. 575), que el arrendador podrá promover la acción de desahucio: "Por necesitar de buena fe la vivienda, o parte de ella, para su uso personal y ocupación inmediata como sitio de residencia."

El certificado expedido por el Acelerador de Viviendas federal lo fué bajo la autoridad de la sección 825.6($a$) y ($c$) (1) del Reglamento aprobado por él a virtud de la auto-

rización concedídale por la sección 209 de la Ley de Inquilinato Federal de 1947, tal y como ésta quedó enmendada por la Ley 31 del Congreso 81, 50 U.S.C.A. App., sec. 1899 (1951 *Supplementary Pamphlet*), 1 *U. S. Code Congressional Service, 81st Congress, First Session* (1949), págs. 21–32.

Dicha sección 209 dispone lo siguiente:

"Cuando quiera que a juicio del Acelerador de Viviendas tal acción sea necesaria o propia con el fin de llevar a cabo los propósitos de esta Ley, él podrá, por reglamentación u orden, regular o prohibir prácticas especulativas o de manipuleo o prácticas de arriendo o inquilinato (incluyendo prácticas relativas al recobro de la posesión) en relación con cualesquiera viviendas controladas, que a su juicio sean equivalentes o puedan resultar en aumentos de alquileres inconsistentes con los fines de esta Ley."

La sección 825.6 (*c*) (1) del Reglamento dispone:

"(*c*) *Certificado de Evicción; motivos para expedirlos.* Ningún inquilino será removido o desahuciado por otros motivos que los expresados en el párrafo (*a*) de esta sección, a menos que a petición del arrendador el Acelerador de Viviendas certifique que el arrendador puede continuar sus remedios de acuerdo con los requisitos de la ley local. El certificado autorizará la continuación de remedios locales a la expiración del período de espera especificado en el párrafo (*d*) de esta sección. El Acelerador así lo certificará si encuentra que remociones o desahucios del carácter propuesto no son inconsistentes con los fines de la ley o este reglamento y no podrían tener el resultado de evadir o violar los mismos. El Acelerador así lo hará constar en los siguientes casos:

"(1) *Ocupación por el dueño.* Cuando el arrendador, que es el dueño de la vivienda, establece que desea de buena fe recobrar la posesión de la misma para su inmediato y personal uso y ocupación como vivienda, o para el inmediato y personal uso y ocupación como vivienda por un miembro o miembros de su familia inmediata (véase definición de 'familia inmediata' al final de este subpárrafo (1) . . ."

La definición a que se hace referencia dice así:

"Para los fines de este párrafo (*c*) (1), el término 'familia inmediata' incluye solamente a un hijo, yerno, hija, nuera, padre, suegro, madre, suegra, hijastro e hijo adoptivo."

La sección 825.6 (*a*) dispone que mientras el inquilino pague la renta a que tiene derecho el arrendador, no se le podrá desahuciar sino por uno de los motivos especificados en dicha sección o a menos que obtenga un certificado de evicción de acuerdo con el párrafo (*c*) de esta sección, supra, pero contiene un "disponiéndose, sin embargo" que dice así:

". . . Que ninguna de las disposiciones de esta sección será interpretada como que autoriza la remoción de un inquilino *a menos que tal remoción esté autorizada bajo ley local.*" (Bastardillas nuestras.)

De acuerdo con la enmienda de que fué objeto la sección 209 de la Ley de Inquilinato Federal en el año 1949, supra, ía situación legal aplicable al presente caso es distinta a la que existía bajo la sección 209 (*a*) (2) de la ley anterior que fué objeto de interpretación por este Tribunal en *Avila* v. *Tribl. de Distrito,* 68 D.P.R. 11. Eso no obstante, en el caso de *Avila,* pág. 21, dijimos lo siguiente:

"Además, es significativo el hecho de que el Congreso, al establecer en la sección 209 (*a*) (2) el derecho de un propietario a desahuciar a su inquilino con el fin de ocupar la vivienda, *no dispuso que este derecho lo tuviera el propietario solamente si el mismo existía bajo la ley del estado.* La sección 209 (*a*) (2) establece de manera terminante esta causal de desahucio independientemente de la ley local. Esto contrasta con la sección 209 (*a*) (1), donde las causales de desahucio deben surgir bajo la ley del estado." (Bastardillas nuestras.)

La situación presente es que la Ley de Inquilinato Federal, sección 209, enmendada en 1949, supra, no dispuso las causales de desahucio sino que dejó la cuestión para ser reglamentada por el Acelerador de Viviendas y éste, al hacerlo, expresamente dispuso que no debía interpretarse su reglamentación en el sentido de autorizar los desahucios a menos que éstos estuvieran permitidos bajo la ley local. Aun al expedir un certificado de evicción dicho funcionario lo hace para que se continúen los remedios locales de acuerdo con los requisitos de la ley local. El propósito de dicho certifi-

cado es significar que el desahucio que interesa el arrendador iniciar en las cortes insulares no viola precepto alguno de la Ley de Inquilinato Federal o del Reglamento del Acelerador. No tiene dicho certificado el alcance que desea darle el peticionario en este caso al efecto de que una vez expedido procede el desahucio si se demuestran los hechos alegados en la demanda, pues el reglamento federal debe prevalecer sobre el artículo 12-A de la Ley de Alquileres Razonables, supra.

En el caso de *Loab Estates* v. *Druhe*, 90 N.E.2d 25, 27 (C.A. N.Y., 1949), interpretando el *disponiéndose* del inciso (*a*) de la sección 825.6, supra, en relación con disposiciones del Código Administrativo de la ciudad de Nueva York que prohibía el desahucio de inquilinos de apartamientos con el fin de retirarlos del mercado de alquiler a menos que el arrendador hubiera hecho arreglos para realocar los inquilinos en residencias similares con una renta no mayor, se dijo por la Corte de Apelaciones de Nueva York:

"El imputado conflicto con la ley Federal no tiene mérito. Consideramos la ley como existe hoy; (cita) y la única inhibición para desahucio de viviendas controladas se encuentra en un reglamento del Acelerador Federal de Viviendas. [Se cita el reglamento y la sección de la ley, supra], junto con una declaración [se refiere al *disponiéndose*] 'que ninguna de las disposiciones de esta sección se interpretará como que autoriza la remoción de ·un inquilino a menos que su remoción esté autorizada bajo ley local.' A la luz de tal lenguaje no podríamos sostener que una restricción por la ley local conflige con la letra y la política de la ley Federal. Véanse *Dickson* v. *Uhlmann Grain Co.*, 288 U. S. 188, 198–200, 53 S.Ct. 362, 77 L.ed. 691, 83 A.L.R. 492; *Tartaglia* v. *McLaughlin*, 297 N.Y. 419, 425–426, 79 N.E.2d 809, 811, 812. La sección 301 del estatuto Federal, Public Law 31, cap. 42, 81st Cong., 1st Sess., 50 U.S.C.A. Appendix, sec. 1907, meramente declara el efecto de dicha ley—que no 'será interpretada para requerir que ninguna persona ofrezca facilidades para viviendas en alquiler'—y no puede leerse como imponiendo una política nacional a los Estados."

Al mismo efecto, en *Batterman* v. *Finkelstein*, 81 N.Y.S.2d 713 (S.Ct., 1948), se sostuvo que no procedía el desahucio cuando el arrendador deseaba la casa para una hermana suya, ya que la ley local sólo lo permitía cuando era el propio arrendador quien iba a ocuparla. Véanse, además, *Wong* v. *Finkelstein*, 87 N.Y.S.2d 226, 86 N.E.2d 563, certiorari denegado en 338 U.S. 859; *Recknagel* v. *Finkelstein*, 86 N.Y.S.2d 611.

■ No existe, a nuestro juicio, conflicto entre el artículo 12-A 6 de la Ley de Alquileres Razonables, supra, y la sección 209 de la Ley de Inquilinato Federal y la sección 825.6 (*a*) y (*c*) (1) del Reglamento del Acelerador de Viviendas, supra. Habiéndose eliminado de la Ley de Inquilinato Federal las causales permisibles para los desahucios, el reglamento promulgado a virtud de dicha ley se circunscribe a autorizar los desahucios si éstos a su vez están autorizados bajo nuestras leyes. No permitiendo el artículo 12-A 6 de la Ley de Alquileres Razonables el desahucio cuando el **arrendador** desea obtener la propiedad arrendada para un hijo suyo, no erró la corte inferior al desestimar la demanda en este caso.

■ Arguye el peticionario que de interpretarse en esta forma el artículo 12-A 6, el mismo sería inconstitucional ya que se le estaría privando de su propiedad al arrendador sin el debido procedimiento de ley, toda vez que él desea retirar su casa del mercado de alquiler para dársela a su hijo que no habrá de pagar canon de arrendamiento alguno por ella y cita el caso de *Rivera* v. *R. Cobián Chinea & Co.*, 181 F.2d 974 (C.A. 1, 1950), para sostener su contención. El peticionario no alegó esos hechos en su demanda y, no obstante habérsele dado por la corte inferior la oportunidad de radicar una demanda enmendada, no lo hizo. Por tanto, no tenemos que considerar la cuestión constitucional planteada. El caso de *Rivera* v. *R. Cobián Chinea & Co.*, supra, es claramente inaplicable a los hechos del presente.

*Debe anularse el auto expedido.*